**REVERSE VENDING ASSOCIATES**

**v.**

**TOMRA SYSTEMS US, INC. and A/S Tomra Systems.**

**Civ. A. No. 86–4857.**

United States District Court, E.D. Pennsylvania.

March 10, 1987.

---

Ruth Rudbarg Wessel, Rex R. Gary, Obermayer, Rebmann, Maxwell & Hippel, Philadelphia, Pa., for plaintiff.

D'Amato & Lynch, New York City, David E. Rosenbaum, Cinnaminson, N.J., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Plaintiff Reverse Vending Associates brings this diversity action against defendants A/S Tomra Systems and Tomra United States, Inc. Presently before this Court is defendant A/S Tomra Systems' motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground that this Court lacks personal jurisdiction over it. Defendant's motion will be granted.

A/S Tomra Systems ("Tomra Norway") is a corporation organized and existing under the laws of Norway with its principal place of business in Asker, Norway. Tomra Norway manufactures at its European facilities reverse vending machines which are capable of receiving used aluminum cans for recycling as aluminum scrap. Tomra Norway has never manufactured or sold reverse vending machines in the United States. It has never sought nor obtained a certificate of authority, or other license, to transact business in Pennsylvania, or in any other state of the United States. Nor has it ever maintained any place of business, salesman or employee at any location in the United States. It has never maintained a telephone listing in any Pennsylvania directory. It has no property, and maintains no bank accounts or other assets, in Pennsylvania. Also, it has never paid any type of taxes to Pennsylva-

nia, and has never appointed any entity in Pennsylvania to act as its agent for service of process.

Tomra Norway is the parent corporation of its wholly owned subsidiary Tomra United States, Inc. ("Tomra U.S."). Tomra U.S. is a Georgia corporation with its principal place of business in Atlanta. Established in 1983, Tomra U.S. is the sole distributor of its parent's product in the United States. Tomra U.S. solicits from its customers in this country orders for the purchase of reverse vending machines. It purchases the components for the machines at arm's length prices from its parent. It then assembles and sells the machines in the United States, and also services the machines. Tomra U.S. has never been given any license from its parent. Furthermore, Tomra U.S. has a different board of directors and different officers than Tomra Norway. Each board keeps complete and distinct minutes of their meetings.

Plaintiff Reverse Vending Associates ("RVA"), a Pennsylvania limited partnership, entered into two contracts with Tomra U.S. Tomra Norway's role in these transactions pivots upon its unconditional guaranty of full and punctual performance by its subsidiary. Tomra Norway's President executed the guaranty in Norway.

■ Under Pennsylvania's long-arm statute, 42 Pa.Cons.Stat.Ann. § 5301, *et seq.* (Purdon's 1981 and Supp.1986), there are two bases by which a non-resident defendant may become subject to the jurisdiction of this Court. The first, "general jurisdiction", exists when a non-resident defendant is carrying on "a continuous and systematic part of its general business within [the] Commonwealth." 42 Pa.Cons. Stat.Ann. § 5301. The second, "specific" or forum related jurisdiction, exists when a non-resident defendant does any of the acts specifically set forth in the statute, limited to causes of action arising out of or related to the defendant's forum related activities. 42 Pa.Cons.Stat.Ann. § 5322. Furthermore, under Pennsylvania's long-arm statute, a court may exercise specific jurisdiction over a person to the fullest extent allowed under the Constitution of the Unit-

ed States, and may base its jurisdiction on the most minimum contact with Pennsylvania allowed under the Constitution. 42 Pa. Cons.Stat.Ann. § 5322(b). Thus, the reach of the Pennsylvania long-arm statute is coextensive with the due process clause of the Constitution. *Dollar Savings Bank v. First Security Bank of Utah,* 746 F.2d 208, 211 (3d Cir.1984).

■ When a defendant challenges a court's *in personam* jurisdiction, the plaintiff bears the burden of proving that the defendant's contacts with the forum are sufficient. *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 63 (3d Cir.1984) (citing *Compagnie des Bauxites de Guinee v. L'Union,* 723 F.2d 357 (3d Cir.1983)). The plaintiff must come forward with sufficient jurisdictional facts either through sworn affidavits, answers to interrogatories, depositions or other competent evidence to establish the court's jurisdiction over the defendant. *Time Share,* 735 F.2d, at 66–67 n. 9.

■ Plaintiff has failed to establish the "continuous and systematic" contacts necessary for this Court to exercise general personal jurisdiction over defendant Tomra Norway. Plaintiff has offered no evidence that Tomra Norway carried on any of its business in Pennsylvania. The record reveals that Tomra Norway has never maintained any place of business, salesman or employee in Pennsylvania. It has never maintained a telephone listing in any Pennsylvania telephone directory, and it has no property, bank accounts or other assets in Pennsylvania. It has never manufactured or sold its product in Pennsylvania. In short, there is no evidence that Tomra Norway has any tie to Pennsylvania which might be considered relevant to the general personal jurisdiction of this forum.

■ Our next inquiry is whether plaintiff has established sufficient facts to support this Court's exercise of specific *in personam* jurisdiction over Tomra Norway. Plaintiff's evidence seeks to establish the minimal requirements of the federal due process standard as incorporated in the Pennsylvania long-arm statute. Thus, we

need only inquire whether the evidence of *in personam* jurisdiction over Tomra Norway comports with the due process requirements of the Constitution. *Van Buskirk v. Carey Canadian Mines, Ltd.,* 760 F.2d 481, 489–90 (3d Cir.1985); *Mantua Oil, Inc. v. C.J. Marketing Company,* 621 F.Supp. 1194, 1196 (E.D.Pa.1985).

The due process clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful "contacts, ties or relations." *Burger King Corporation v. Rudzewicz,* 471 U.S. 462, 469, 105 S.Ct. 2174, 2181, 85 L.Ed.2d 528 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319, 66 S.Ct. 154, 160, 90 L.Ed. 95 (1945)). This due process protection requires that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Burger King,* 105 S.Ct. at 2182 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683 (1977)), and thus "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *Burger King,* 105 S.Ct. at 2182 (quoting *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980)).

The constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum state. *Burger King,* 105 S.Ct. at 2183 (quoting *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158). In interpreting this constitutional standard, the Supreme Court has determined that, where a forum seeks to assert specific jurisdiction over an out-of-state defendant who has not consented to suit there, the defendant must have purposefully availed itself of the privilege of acting within the forum state. *World-Wide Volkswagen,* 444 U.S. at 295, 100 S.Ct. at 566; *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958).

■ In an attempt to satisfy the constitutional minimum contacts requirement, plaintiff submitted a copy of the contract between RVA and Tomra U.S., and an affidavit from RVA's General Partner, Mr. McCain. However, the bulk of plaintiff's averments consists merely of a recitation of unilateral activity on its part which is insufficient to establish minimum contacts. As the Supreme Court has noted:

The unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum state ... it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.

*Hanson v. Denckla,* 357 U.S. at 253, 78 S.Ct. at 1239. The fact that plaintiff prepared promotional material and solicited customers in Pennsylvania does not in any way show that Tomra Norway performed acts by which it could reasonably expect to be haled into court in Pennsylvania. *Time Share,* 735 F.2d at 65. Furthermore, even assuming that plaintiff's acts were in compliance with its contract with Tomra U.S., and that Tomra Norway guaranteed that contract, the contract itself does not specifically contemplate plaintiff's solicitation of Pennsylvania investors. RVA was free to fulfill its contractual obligations by obtaining investors from any state. Although plaintiff purposefully directed its activities to Pennsylvania residents, this is unilateral activity on its part and cannot be imputed to defendant.

■ In an attempt to tie defendant's guaranty to plaintiff's activities in Pennsylvania, plaintiff's affidavit states that its contract with Tomra U.S. would not have been executed but for defendant's execution of the guaranty. Defendant's affidavit states that its guaranty was executed in Norway and mailed to Tomra U.S. in Atlanta, Georgia and then, according to plaintiff's affidavit, it was mailed to plaintiff in Pennsylvania for the purpose of being attached to the private placement memorandum for presentation to potential investors.

Even assuming the truth of plaintiff's averments, the fact that plaintiff found such a guaranty a necessary condition to its undertaking does not prove that Tomra Norway induced plaintiff to solicit investors in Pennsylvania. Plaintiff's averments remain a recitation of unilateral activity on its part.

■ We must examine what acts the *defendant* committed by which minimum contacts could be established. Plaintiff relies on the quality of a single act; that is, the circumstances surrounding, and the effect of, Tomra Norway's execution of the guaranty. Reviewing the record before us, we find no supplemental contacts that might tie Tomra Norway to this forum. If Tomra Norway's efforts were "purposefully directed" toward Pennsylvania residents, the absence of physical contacts would not defeat jurisdiction in this forum. *Burger King,* 105 S.Ct. at 2184. However, a nonresident defendant's contract, in this case a guaranty, with a Pennsylvania business entity *alone* cannot automatically establish sufficient minimum contacts. *Burger King,* 105 S.Ct. at 2185. Instead, we must determine whether Tomra Norway's efforts were in any way directed toward Pennsylvania residents or evidence an intent to participate in the local Pennsylvania economy.

There is no evidence that Tomra Norway sought out Pennsylvania investors or even Pennsylvania businessmen. As plaintiff admits, RVA's General Partner was the party to reach out beyond this forum and initiate negotiations with Tomra Norway for its guaranty. There is no evidence that any negotiations, meetings or phone calls took place in Pennsylvania, and it is undisputed that the guaranty was executed in Norway.

Furthermore, although the guaranty plainly had commercial consequences, any benefits derivable by Tomra Norway from its guaranty are too attenuated to subject it to this forum's jurisdiction. Since Tomra Norway received no separate compensation for its guaranty, Tomra Norway would have benefited only indirectly through the enhanced prosperity of its solely owned subsidiary. Although Tomra Norway had a substantial financial interest in the well-being of its subsidiary, its act of guaranteeing its subsidiary's contract with plaintiff cannot be fairly characterized as an attempt to enter and exploit the Pennsylvania marketplace. Whatever the parties contemplated the future consequences of the contract between plaintiff and Tomra U.S. to be, there is no evidence Tomra Norway sought to participate in benefits from the local Pennsylvania economy.

■ Not only is there no evidence of a purposeful decision by Tomra Norway to participate in the benefits of the Pennsylvania economy, but also there is no evidence it availed itself of any protections in this forum. Even assuming that Tomra U.S., the principal obligor, availed itself of the privilege of doing Pennsylvania business and could have invoked Pennsylvania law to protect its rights, it does not follow that its benefits and protections may simply be derivatively ascribed to Tomra Norway. To casually impute them to Tomra Norway would be fundamentally inconsistent with the liberty values preserved by the minimum contacts inquiry which is concerned with the due process rights of defendants and "properly focuses on 'the relationship among the defendant, the forum and the litigation.'" *Keeton v. Hustler Magazine,* 465 U.S. 770, 775, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (quoting *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977)).

Plaintiff proposes an alternative theory for holding Tomra Norway amenable to this Court's jurisdiction. Plaintiff contends that Tomra Norway, through its exercise of complete domination and control, rendered its subsidiary into its "alter ego", a mere tool with which to exploit the United States investment market. From this allegation, plaintiff argues that Tomra Norway should be amenable to jurisdiction on the basis of its subservient corporation's relationship to this forum. Tomra U.S. has not contested jurisdiction in this action. Thus, plaintiff objects to Tomra Norway's challenge to this Court's jurisdiction as an attempt to unjustly evade litigation in the

**1128**

courts of Pennsylvania. Plaintiff contends such conduct is comparable to circumstances where the corporate veil is used as a shield against liability from fraud, and thus, urges us to pierce the facade of Tomra Norway's separate corporate existence.

The burden of proof for the application of the alter ego theory rests with the party attempting to negate the existence of a separate entity. *Publicker Industries v. Roman Ceramics,* 603 F.2d 1065, 1069 (3d Cir.1979). In deciding whether to apply the alter ego theory, we must start from the general rule that the corporate entity should be upheld unless specific, unusual circumstances call for an exception. Otherwise, the entire theory of the corporate entity with limited liability would be useless. *Zubik v. Zubik,* 384 F.2d 267, 273 (3d Cir.1967); *accord, Chengelis v. Cenco Instruments Corp.,* 386 F.Supp. 862, 865 (W.D.Pa.), *aff'd without opinion,* 523 F.2d 1050 (3d Cir.1975). Thus, the application of the alter ego theory to pierce the corporate veil is a "tool of equity ... appropriately utilized 'when the court must prevent fraud, illegality, or injustice, or when recognition of the corporate entity would defeat public policy or shield someone from liability for a crime.'" *Publicker,* 603 F.2d at 1069 (quoting *Zubik,* 384 F.2d at 272); *accord, Chengelis,* 386 F.Supp. at 865. Such circumstances justify piercing the corporate veil because the limited liability inherent in the corporation's separate existence is misused as a means or intermediary for the perpetration of fraud, illegality or injustice. *Publicker,* 603 F.2d at 1069; *Zubik,* 384 F.2d at 273; *Chengelis,* 386 F.Supp. at 865.

Plaintiff has offered no evidence that the separate corporate form of either corporation was used by Tomra Norway as a means to perpetrate a fraud or promote injustice akin to fraud. Furthermore, even assuming as alleged that Tomra U.S. was created for the purpose of avoiding litigation in the courts of Pennsylvania, the success of plaintiff's alter ego theory would have to be secured at the threshold by evidence showing that Tomra Norway was the dominant entity controlling the decisions and activities of the subservient corporation, Tomra U.S. *American Bell Inc. v. Federation of Tel. Workers,* 736 F.2d 879, 886–87 (3d Cir.1984); *Croyle v. Texas Eastern Corporation,* 464 F.Supp. 377, 379 (D.Pa.1979); *Botwinick v. Credit Exchange, Inc.,* 419 Pa. 65, 72–73, 213 A.2d 349, 354 (1965). There is evidence in the record which shows a close relationship between Tomra Norway and its subsidiary. However, both corporations have entirely separate officers and boards of directors which maintain separate and distinct meetings and minutes. There is no evidence that either corporation failed to maintain recognized corporate formalities. Also, Tomra U.S. purchases its parent's product at arm's length prices, and has never been granted any license by its parent. The only evidence plaintiff offers, from which an inference could be drawn that the two corporations do not deal with each other as separate legal entities, is plaintiff affiant's own statements. RVA's General Partner swears that executives of Tomra U.S. and Tomra Norway clearly stated to him that Tomra U.S. was a new company "being effectively run" by Tomra Norway executives, and that Tomra U.S. had no power to make any decision which was not approved and ratified by Tomra Norway. In short, plaintiff invites this Court to speculate, on the basis of its own affiant's statements alone, unsupported by any independent evidence that Tomra Norway controlled the activities of Tomra U.S. and that Tomra Norway has usurped Tomra U.S.' corporate identity. We decline to do so, and therefore we will not apply the alter ego theory, for the purpose of finding personal jurisdiction, to the facts plaintiff has presented.

Plaintiff has failed to carry its burden of providing sufficient jurisdictional facts to establish personal jurisdiction over Tomra Norway. Therefore, Tomra Norway's motion to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure on the ground of lack of personal jurisdiction will be granted.