600 A.2d 972

J.C. SNAVELY & SONS, INC., Appellant,

v.

SPRINGLAND ASSOCIATES, INC. and
Charles W. Knapp, Appellees.

Superior Court of Pennsylvania.

Submitted July 18, 1991.

Filed Dec. 17, 1991.

2

Dale E. Lapp, Lancaster, for appellant.

Paul K. Allison, Lancaster, for appellees.

Before POPOVICH, HUDOCK and MONTGOMERY, JJ.

MONTGOMERY, Judge:

This is an appeal from the trial court's order granting preliminary objections. The order dismissed appellant's case for lack of *in personam* jurisdiction.

The sole issue before this court is whether the trial court correctly concluded that it did not have personal jurisdiction over appellee Charles W. Knapp. Appellant, J.C. Snavely & Sons, Inc., a Pennsylvania corporation with its principal place of business in Landisville, Pennsylvania, entered into an agreement to supply building materials to Springland Associates, Inc., a Delaware corporation with its principal place of business in New York, New York. Appellee, the Vice President of Springland Associates, Inc., and a resident of New York, signed as personal guarantor to a credit agreement between the companies. When evaluating the product for his employer, Mr. Knapp visited appellant's

4

factory in Pennsylvania two or three times. There was no evidence of further contacts between Mr. Knapp and the forum.

■ When a preliminary objection results in the dismissal of an action it is sustained only in those cases which are "clear and free from doubt." *Kenneth H. Oaks, Ltd. v. Josephson,* 390 Pa.Super. 103, 568 A.2d 215, 216 (1989). The court must view the evidence in a light most favorable to the nonmoving party. *Id.*

■ Pennsylvania retains personal jurisdiction over nonresidents to the fullest extent permitted by the United States Constitution. 42 Pa.C.S. § 5322(b), *Temtex Products Inc. v. Kramer,* 330 Pa.Super 183, 479 A.2d 500 (1984). Accordingly, the sole limitations on jurisdiction are those set forth in the Due Process Clause of the Fourteenth Amendment of the United States Constitution. *Id.* Specifically, due process requires that the defendant have sufficient contacts with the forum such that granting jurisdiction would not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

■ Analysis of what constitutes minimum contacts is not a formulaic process, but requires a case by case analysis. *Skinner v. Flymo, Inc.,* 351 Pa.Super. 234, 505 A.2d 616 (1986) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Random, fortuitous or attenuated contacts do not constitute the requisite minimum contacts. *Id.* Nor will the existence of a contract with an out of state party, alone, suffice to establish jurisdiction. *Burger King Corp. v. Rudzewicz, supra.* The court must consider whether the defendant should reasonably anticipate being haled into court as a result of conduct and connections with the forum state. *Id.* It is critical that the defendant avail himself of the privilege of conducting activities in the forum state and that it is not merely the result of unilateral activity on the part of a third person or another party. *Id.*

 Appellant cites "two or three" visits to Pennsylvania "to view the Snavely operation and to examine the type of material Springland would be purchasing ..." as the necessary minimum contacts. Appellant's brief at 11. This evidence does not constitute sufficient minimum contacts to establish *in personam* jurisdiction. Two types of *in personam* jurisdiction must be considered. General jurisdiction exists where a defendant's activities are substantial and continuous within the forum, regardless of the nexus to the cause of action. *Skinner v. Flymo, Inc., supra.* Specific jurisdiction is based upon a defendant's acts within the forum which give rise to the cause of action. *Id.*

There exists no basis for a finding of general jurisdiction. Mr. Knapp's sole contacts with Pennsylvania consist of two or three visits. Appellant's activities within Pennsylvania do not rise to the continuous and substantial standard. See *Nolt & Nolt, Inc. v. Rio Grande, Inc.,* 738 F.Supp. 163 (E.D.Pa.1990).

 Additionally, there exists no support for a finding of specific jurisdiction. The guarantee between Mr. Knapp and appellant constitutes a separate and independent contract. *Hyster Credit Corp. v. O'Neill,* 582 F.Supp. 414 (E.D.Pa.1983). As noted in appellant's brief, the personal guaranty was signed "in [Mr. Knapp's] individual capacity." Appellant's brief at 10. When seeking to establish specific jurisdiction, only those contacts which relate to Mr. Knapp's agreement with appellant are significant. *Skinner v. Flymo, Inc., supra.* Mr. Knapp's contacts as an agent of Springland Associates are not attributable to him for purposes of establishing specific jurisdiction. See, e.g., *Babich v. Karsnak,* 364 Pa.Super. 558, 528 A.2d 649 (1987).

There exist no contacts between Mr. Knapp, as an individual, and the forum. Mr. Knapp traveled to Pennsylvania, in his capacity as an employee, to view the products his employer proposed to buy. Appellant's cause of action with defendant arises from the guaranty signed by Mr. Knapp. Accordingly, these visits cannot be considered for purposes of establishing specific jurisdiction.

Moreover, there exists no evidence of further contacts between Mr. Knapp and Pennsylvania. The guaranty was signed in New York. No further interactions regarding this agreement occurred. Appellant cites phone calls, mailings and invoices as evidence of contacts. These contacts were all contacts between the corporations, in reference to their agreement, and there is no indication of Mr. Knapp's involvement in any manner.

The conclusion we reach is supported by *Reverse Vending Associates v. Tomra Systems U.S., Inc.*, 655 F.Supp. 1122 (E.D.Pa.1987). Tomra Systems U.S., Inc., (Tomra U.S.) incorporated and located in Atlanta, Georgia, was a wholly owned subsidiary of A/S Tomra Systems (Tomra Norway), located in Asker, Norway. Tomra U.S. executed two contracts with Reverse Vending, a partnership located in Pennsylvania. However, before entering the agreement Reverse Vending requested and received a guaranty from Tomra Norway. Reverse Vending stated that there would be no agreement if the guaranty was not forthcoming. Tomra Norway signed the document in Norway and mailed it to their subsidiary in Atlanta. In turn, Tomra Systems U.S. passed the agreement on to the plaintiff. The *Tomra* court concluded that there were insufficient minimum contacts to exercise jurisdiction.

Noting the lack of physical contacts the *Tomra* court then considered whether Tomra Norway had purposefully directed its efforts towards Pennsylvania residents. A purposeful availment of the benefits arising from the forum state may constitute grounds for jurisdiction, notwithstanding the lack of physical contacts. *Burger King Corp. v. Rudzewicz, supra.* The analysis of this issue is similar in both Tomra and the instant case. In both cases the Pennsylvania resident sought the guaranty. There is no evidence that any phone calls, negotiations or meetings regarding the guaranty took place in Pennsylvania. Finally, as in Tomra, there is no evidence Mr. Knapp "sought to participate in benefits from the local Pennsylvania economy."

*Reverse Vending Associates v. Tomra Systems, U.S., Inc.,* 655 F.Supp. at 1127. Accordingly, we affirm.

Order affirmed.

HUDOCK, J. files a Dissenting Opinion.

HUDOCK, Judge, dissenting:

J.C. Snavely & Sons, Inc. (Snavely) appeals from an order of the Court of Common Pleas of Lancaster County granting Charles W. Knapp's (Knapp) preliminary objections and dismissing its case for lack of *in personam* jurisdiction over Knapp. Because I believe the majority incorrectly concluded that the trial court lacked *in personam* jurisdiction over Knapp, I must respectfully dissent.

Snavely is a Pennsylvania corporation with its principal place of business in Landisville, Pennsylvania. Springland Associates, Inc. (Springland) is a Delaware corporation with its principal place of business in New York, New York. Knapp was the Vice President of Springland and a resident of New York. Snavely and Springland entered into an agreement whereby Snavely would supply building materials on open account to Springland. To accommodate the underlying contract between Snavely and Springland, Knapp signed, as personal guarantor, a credit agreement between Snavely (the creditor) and Springland (the principal obligor). To view Snavely's operation and evaluate its products for his employer, Knapp visited Snavely's factory in Pennsylvania on several occasions before signing the credit application. This action arose out of Knapp's refusal to pay Springland's outstanding account balance with Snavely pursuant to the guaranty Knapp signed on the credit application. Knapp contends he is not subject to Pennsylvania's jurisdiction because he has no contacts with this forum. Snavely, on the other hand, relies on Knapp's voluntary and purposeful assumption of a business obligation in Pennsylvania, the breach of which foreseeably resulted in litigation in this Commonwealth.

The law applicable in this situation is undisputed. Personal jurisdiction over a non-resident defendant takes one of several modern forms, *e.g.*, statutory, general, or specific. Regardless of the form exercised by a forum, personal jurisdiction over non-resident defendants is bounded by the due process limitations of the Fourteenth Amendment. *Eastern Continuous Forms, Inc. v. Island Business Forms, Inc.*, 355 Pa.Super. 352, 354, 513 A.2d 466, 467 (1986). With this limitation in mind, a forum has general jurisdiction where the non-resident defendant has sufficient minimum contacts with the forum so as not to offend the traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1949) (non-resident company conducting systematic and continuous business activity within the forum subject to forum's jurisdiction). Such contacts may not give rise to a particular cause of action but do make reasonably foreseeable that a non-resident defendant could expect to be haled into a forum's courts. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A defendant's contacts must attain a level such that he has fair warning that his activities may subject him to the forum's jurisdiction. *Asahi Metal Industry Co., Ltd. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). Where a defendant purposefully avails himself of a forum or directs his activities at residents of the foreign forum, then he subjects himself to that forum's jurisdiction, even where there are no physical contacts with the state. *Skinner v. Flymo*, 351 Pa.Super. 234, 242–43, 505 A.2d 616, 621 (1986) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985)).

Specific jurisdiction exists where a defendant's activity within the forum gives rise to a particular cause of action. *See MaGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (in action for payment of benefits, single insurance contract between non-resident and resident gave forum personal jurisdiction over non-

resident insurance company). Although entering into a contract is not, without more, sufficient to establish minimum contacts, "negotiations prior to the contract, its contemplated future consequences, the terms of the contract and the parties' actual course of dealing must be evaluated" in determining whether a non-resident defendant purposely availed itself of the privilege of acting within the foreign forum. *Kenneth H. Oaks, Ltd. v. Josephson,* 390 Pa.Super. 103, 106–07, 568 A.2d 215, 217 (1989) (quoting *World–Wide Volkswagen,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490). For example, in *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985), a single franchise agreement, solicited by non-resident defendants but negotiated, executed and performed in the forum, was a sufficient contact for specific jurisdiction over the defendant.

No far stretch of the imagination or of jurisdiction is required to include within Pennsylvania's specific jurisdiction the piggy-back guaranty agreement between Knapp and Snavely. This Court has spoken about such interstate contractual obligations as follows:

> [P]arties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.

*Oaks, Ltd.,* 390 Pa.Super. 103, 106, 568 A.2d 215, 217 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182). The majority cites to *Hyster Credit Corp. v. O'Neill,* 582 F.Supp. 414 (E.D.Pa.1983) for the proposition that Knapp's guaranty agreement is a separate and independent contract. This case is not binding authority. Furthermore, the context from which this proposition was drawn suggests that a guarantor may assume greater liability than the debtor, if the terms and conditions of the guaranty agreement so provide. The *Hyster* court went on to opine that a court "must determine and give effect to the intentions and language as read in light of the attendant circumstances

and purposes for which the guaranty was created." *Hyster*, 582 F.Supp. at 416.

In the case at bar, I consider the two agreements to be mutually dependent. Without Knapp's guaranty, the underlying contract would not have been secured. If the underlying contract could have been entered into without security, then Knapp's guaranty served no apparent purpose. While Knapp's guaranty was independent in the sense that he could have taken on greater liability, its *raison d'etre* was to secure the sales contract between Snavely and Springland. Logically, the contacts between Snavely and Springland have some bearing on the contacts between Snavely and Knapp.

Knapp knowingly and voluntarily entered the guaranty agreement with the Pennsylvania-based Snavely company, signing in his individual capacity. The pertinent language of the guaranty provides that "The undersigned, intending to be legally bound, hereby guarantees the prompt and full payment when due of all account balances which may be outstanding from time to time with J.C. Snavely & Sons, Inc., of the business listed in the above Business Credit Application. /s/ Charles W. Knapp." If and when account balances with Snavely were outstanding, the underlying contract would have been breached and Knapp could reasonably have expected being called into this Commonwealth to cure Springland's default.

During the open account period of the underlying sale agreement between Snavely and Springland, Knapp was obligated to make any payments that Springland failed to make. That very contingency occurred, thereby activating Knapp's obligation. Moreover, common sense dictates that the underlying obligation involved continued and prospective interstate business transactions between Springland in New York and Snavely in Pennsylvania. According to the undisputed pleadings, the goods provided by Snavely were manufactured in and shipped from Snavely's operation in Pennsylvania. Invoices were sent from Pennsylvania and

several payments were received from Springland in Pennsylvania.

The mailings, phone calls, and invoices which the majority dismisses as insufficient evidence of contacts between Knapp and Pennsylvania I consider vital to the main objective of Knapp's personal guaranty—the ongoing harmonious relationship between buyer and seller. As long as the underlying contract was effective, Knapp's liability as personal guarantor was on the line. Considering Knapp entered the guaranty as security for the sales agreement and with knowledge of the parties and terms involved, Knapp obviously availed himself of an opportunity to contract in Pennsylvania and subjected himself to this forum's jurisdiction.

The majority mentions that the guaranty was signed in New York. In this Commonwealth, where the agreement was signed is not as dispositive as where the guaranty was accepted. *See Watson v. Lehigh Valley Woodwork Corp.*, 198 F.Supp. 273, 275–76 (E.D.Pa.1961) (when acceptance is made by the guaranteed party and notice given, the place of contracting is the origin of the acceptor-guarantee's communication). While the pleadings indicate that Knapp signed the guaranty in New York, logic dictates that the agreement would be returned to Pennsylvania for acceptance by the guarantee, Snavely. Consequently, Pennsylvania would be the situs of the contract between Knapp and Snavely and, as such, would have jurisdiction over the parties to the contract.

Relying on the case of *Reverse Vending Assoc. v. Tomra Systems U.S., Inc.*, 655 F.Supp. 1122 (E.D.Pa.1987), the majority finds no evidence of personal jurisdiction over Knapp. While I cannot dismiss out of hand the similar scenario presented by *Reverse Vending*, I question its persuasive authority in light of the controlling state law cited in this dissent. *See McCue v. State Employes' Retirement Bd.*, 138 Pa.Cmwlth. 300, 588 A.2d 980, 984 (1991) (while decisions of lower federal courts have a persuasive authority, they are not binding on state courts). In addition, the

*Reverse Vending* court found no evidence of the guarantor entering the forum to solicit a business obligation, i.e., no phone calls, no correspondence. Knapp, on the other hand, entered Pennsylvania for the express purpose of evaluating Snavely's operation to ensure the underlying contract would be successful. Obviously satisfied with Snavely's product, Knapp entered the guaranty. By doing so, he became a key participant in this interstate transaction.

This isolated guaranty contract, out of which the present cause of action arose, and the course of dealing surrounding its consummation are a sufficient basis for Pennsylvania's exercise of specific, personal jurisdiction over the nonresident guarantor. I would reverse the order granting Knapp's preliminary objections.