NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3491
_____

MARK J. CERCIELLO, M.D.,

Appellant

v.

S. TERRY CANALE, M.D.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 12-cv-06933)
District Judge:  Hon. Joel H. Slomsky
_____

Submitted Under Third Circuit LAR 34.1(a)
April 8, 2014

Before:   AMBRO, JORDAN and ROTH, *Circuit Judges*.

(Filed: April 23, 2014)
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

Dr. Mark J. Cerciello appeals an order of the United States District Court for the

Eastern District of Pennsylvania dismissing his lawsuit against Dr. S. Terry Canale for

lack of personal jurisdiction.  For the reasons that follow, we will affirm.

## I.  Background[1]

### A.  *Factual Background*

Cerciello is a board-certified orthopedic surgeon, a member of the American College of Forensic Examiners, a Certified Forensic Physician, and, until his suspension on September 24, 2011, a Fellow of the American Academy of Orthopaedic Surgeons and the American Association of Orthopaedic Surgeons (together, "AAOS")[2].  Since 1969, Cerciello has maintained an orthopedic clinical practice in Allentown, Pennsylvania.  In addition, prior to his suspension from AAOS, Cerciello "sporadically engaged in providing forensic orthopedic consulting opinions in malpractice" cases and had testified as an expert witness.  (App. at 24 (Complaint).)  One such opinion is at the root of this case.

After providing an expert witness report in a malpractice suit against a fellow orthopedic surgeon, Cerciello received a letter from AAOS's General Counsel notifying him that the doctor whom he had testified against had filed a formal grievance requesting

---

[1] We accept Cerciello's allegations as true and construe disputed facts in his favor for the purposes of this appeal.  *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 257 (3d Cir. 1998) (citing *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 142 (3d Cir.1992)).  Still, Cerciello "bears the burden to prove, by a preponderance of the evidence," that personal jurisdiction is proper.  *Carteret Sav. Bank*, 954 F.2d at 146. To meet that burden, he must "establish[] jurisdictional facts through sworn affidavits or other competent evidence."  *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 101 n.6 (3d Cir. 2004).  In other words, "bare pleadings alone" are insufficient to withstand a motion to dismiss for lack of personal jurisdiction.  *Id*.

In addition, because we write solely for the benefit of the parties, we recite only the facts essential to our disposition.

[2] The parties treat those organizations as functionally the same and so do we. Similarly, the parties treat AAOS as a corporation, and we therefore do so as well.

that the Committee on Professionalism of AAOS review whether Cerciello had violated the organization's Standards of Professionalism in Orthopaedic Expert Witness Testimony. Following an investigation – in which Cerciello failed to appear or defend his actions because he believed the grievance to be "patently frivolous" (App. at 27 (Complaint)) –AAOS's Board of Directors voted to suspend him from membership for a period of two years. That suspension was subsequently published in a disciplinary notice in the December 2011 edition of the monthly magazine *AAOS Now*, which is mailed and emailed to AAOS's 27,000 members nationwide, including many practicing orthopedic surgeons in Pennsylvania, as well as being available on AAOS's public website. Both the decision to publish the suspension and the posting about it online occurred in Illinois, where AAOS is headquartered.

Canale has served as *AAOS Now*'s Editor-in-Chief since 2007, and he confirmed in his deposition that, in that capacity, he "authorized" the publication of Cerciello's suspension, as he does all articles that appear in the newsletter. In his Answering Brief, Canale maintains that publication of the suspension was "consistent with [AAOS's] Grievance Procedures and Bylaws," which Cerciello does not refute. (Appellee's Br. at 7.) Cerciello also does not refute that the article announcing the suspension was prepared by AAOS's Office of General Counsel and that Canale had no knowledge of the suspension itself until the announcement was sent to him for editing.

Though he is Editor-in-Chief of the organization's publication, Canale is not a current corporate officer or director of AAOS.[3]  As far as the record shows, his editorial responsibility is to "review all the material that goes into the publication" of *AAOS Now* for grammar and typographical errors, for which he receives an annual salary.  (App. at 58 (Canale's Deposition).)  Canale also practices as an orthopedic surgeon in Memphis, Tennessee, where he lives.

In 2012, after Cerciello's suspension had already been published in *AAOS Now*, Canale visited Philadelphia for a meeting of AAOS. Though Canale had his medical training in Philadelphia several decades ago, he has returned since only twice:  once "five or six years ago, and then about 15 years ago," when he was invited to speak at Jefferson Hospital as an honored guest.[4]  (App. at 65 (Canale's Deposition).)

B.    *Procedural History*

Cerciello brought suit against Canale in Pennsylvania's Court of Common Pleas, alleging tortious interference with contractual relations, commercial disparagement, defamation, and false light invasion of privacy.[5]  Canale removed the case to the District Court and thereafter filed a Motion to Dismiss on multiple grounds, including lack of

---

[3] In the past, Canale has served in various positions as an officer of AAOS.

[4] Canale lived in Philadelphia during his residency at Jefferson Medical College. He moved to Tennessee upon graduation and has lived there for the past forty years.

[5] Cerciello did not sue AAOS but brought this suit against Canale after AAOS sought a declaratory judgment against Cerciello in federal district court in Illinois in a case involving essentially the same dispute. *Am. Acad. of Orthopaedic Surgeons v. Cerciello*, No. 12 C 3863, 2013 WL 1679396, at *1 (N.D. Ill. Apr. 16, 2013).  That case has since been transferred to the Eastern District of Pennsylvania. *Id.* at *3.

4

personal jurisdiction. The District Court granted the motion, holding that there was no basis to exercise personal jurisdiction over Canale.

This timely appeal followed.

## II. Discussion[6]

Cerciello disputes the District Court's dismissal of his suit. His arguments seem to assume that Canale acted as a corporate officer of AAOS or, in the alternative, that Canale's contacts with Pennsylvania were sufficient in an individual capacity to support jurisdiction. We cannot accept those assumptions.

A federal district court may assert personal jurisdiction over a nonresident to the extent authorized by the laws of the state in which it sits. Fed. R. Civ. P. 4(e); *see also Pennzoil Prod. Co. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998). When a challenge to personal jurisdiction is raised, a court undertakes a two-part inquiry, asking (1) whether a plaintiff has produced sufficient facts to show that there is a *statutory* basis for such jurisdiction under the laws of the forum state; and (2) whether the nonresident has sufficient "minimum contacts" with the state to satisfy the strictures of *constitutional* due process. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155 (3d Cir. 2010).

---

[6] The District Court had subject matter jurisdiction under 28 U.S.C. § 1332. We have jurisdiction over Cerciello's appeal pursuant to 28 U.S.C. § 1291. "Whether personal jurisdiction may be exercised over an out-of-state defendant is a question of law." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 329 (3d Cir. 2009) (quoting *Mellon Bank (East) PSFS, N.A. v. Di Veronica Bros., Inc.,* 983 F.2d 551, 554 (3d Cir. 1993)). We therefore review de novo the District Court's determination that it lacked personal jurisdiction. *Id.*

5

Section 5322(a) of Pennsylvania's long-arm statute authorizes courts of the Commonwealth to exercise specific jurisdiction when, in relevant part, a defendant is:

> 1) Transacting any business in this Commonwealth.
> ...
> (3) Causing harm or tortious injury by an act or omission in this Commonwealth.
> (4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth. ...

42 Pa. Cons. Stat. § 5322(a). Separately, § 5322(b) operates as a catch-all, allowing courts to assert jurisdiction "to the fullest extent allowed under the Constitution of the United States," and noting that even "the most minimum contact" can confer jurisdiction. *Id.* § 5322(b). In other words, under §5322(b), courts "need only decide whether holding ... [the nonresident defendant] subject to a suit in Pennsylvania would be a violation of due process," bypassing a separate statutory analysis that would be required under §5322(a). *Scoggins v. Scoggins*, 555 A.2d 1314, 1319 (Pa. Super. Ct. 1989) (alterations in original) (internal quotation marks omitted)). When there is an assertion of specific jurisdiction, as in this case,[7] the constitutional inquiry requires a court to consider, first,

---

[7] A court may sometimes assert "general" personal jurisdiction over a defendant based on his overall contacts with a state. General jurisdiction is proper only if the defendant has maintained "continuous and systematic" contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall.* 466 U.S. 408, 416 (1984). This involves showing "significantly more than mere minimum contacts," *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted), and the supporting facts underlying jurisdiction must be "extensive and persuasive," *Reliance Steel Prods. v. Watson, Ess, Marshall*, 675 F.2d 587, 589 (3d Cir. 1982). Cerciello does not contend that Canale has sufficient contacts to warrant general jurisdiction over him in Pennsylvania, and rightly so. General jurisdiction is not appropriate here since Canale's contacts are neither "continuous and systematic" nor "extensive and persuasive." As the District Court correctly noted, the only question is

6

whether the defendant "purposefully directed his activities" at the forum, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985) (internal quotation marks omitted); second, whether the litigation "arise[s] out of or relate[s] to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); and third, if the first two requirements are met, whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice,'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945)).

Unfortunately, the precedents associated with the exercise of specific jurisdiction are not consistent when it comes to jurisdiction over people sued in their individual capacities for wrongs associated with corporate acts. On the one hand, some decisions appear to have adhered to a bright-line rule that a defendant's acts must be undertaken in an individual capacity, rather than a corporate capacity, to warrant the exercise of jurisdiction. *See J.C. Snavely & Sons, Inc. v. Springland Assocs., Inc.*, 600 A.2d 972, 974 (Pa. Super. Ct. 1991) ("Mr. Knapp's contacts as an agent of Springland Associates are not attributable to him for purposes of establishing specific jurisdiction."). This so-called "corporate shield" doctrine[8] sometimes protects defendants who are thus sued in their individual capacities for what are corporate acts. *Maleski by Taylor v. DP Realty Trust*,

---

whether Canale's contacts with Pennsylvania were sufficient to support specific jurisdiction.

[8] Other courts have used the term "fiduciary shield doctrine." *See, e.g.*, *Newsome v. Gallacher*, 722 F.3d 1257, 1278-79 (10th Cir. 2013); *Grober v. Mako Products, Inc.*, 686 F.3d 1335, 1345 (Fed. Cir. 2012), reh'g denied (Sept. 14, 2012); *Snowstorm Acquisition Corp. v. Tecumseh Products Co.*, 739 F. Supp. 2d 686, 700 n.8 (D. Del. 2010).

653 A.2d 54, 62 (Pa. Commw. Ct. 1994). But other Commonwealth courts have taken a more flexible approach,[9] looking to a handful of factors to determine whether jurisdiction is appropriate, *id.* at 63. One particularly significant factor is the status of the employee as an officer or director of the corporation in question. *Cf. id*. ("To determine whether there is jurisdiction over a [nonresident] corporate officer or director ..., it is necessary under this case-by-case approach to examine factors such as the officer's role in the corporate structure, the quality of the officer's forum contacts and the extent and nature of the officer's participation in the alleged tortious conduct.").

While Cerciello makes arguments justifying specific jurisdiction over Canale based on the offending AAOS publication, none succeed for the simple reason that Canale is not an officer or director of AAOS and did not take any actions in an individual capacity to warrant jurisdiction. The complaint is about AAOS producing a publication, but there is simply no evidence that Canale had any corporate authority at AAOS when that publication occurred.[10] True, he was "Editor-in-Chief," but we cannot assume that meant he had any corporate control. We cannot even be sure what that meant about editorial content. The disciplinary notices, after all, were drafted by the AAOS General

---

[9] Commonwealth courts often cite federal district court cases on this subject, but those too are not consistent. *Compare Donner v. Tams-Witmark Music Library, Inc.*, 480 F. Supp. 1229, 1234 (E.D. Pa. 1979) ("It would be anomalous … to permit a corporate officer to shield himself from jurisdiction by means of the corporate entity, when he could not interpose that same shield against substantive liability."), *with Simkins Corp. v. Gourmet Rest. Int'l*, 601 F. Supp. 1336, 1345 (E.D. Pa. 1985) ("[A] corporate officer or director's actions taken in his corporate capacity are … insufficient to bring him personally within the jurisdiction of this court.").

[10] We are not suggesting that titles are dispositive. De facto control would of course be relevant, even without official office, but there is no evidence of that here.

8

Counsel and included in *AAOS Now* only in accordance with an established AAOS protocol.

Cerciello's argument that editors can be held liable for printing defamation misses the point. The question is not whether a court could properly assert personal jurisdiction over some other editor of some other publication. The question is about this editor and this publication. It is fact specific. Though not cited by either party in their briefs, the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), held that an editor who was also the corporation's president was subject to personal jurisdiction in a state other than his domicile because a person with that level of authority "oversee[s] just about every function of the [publication]," including the sending of magazines to other states. *Id*. at 786 (internal quotation marks omitted). The same cannot be said of Canale in this case. While he may review what is printed in AAOS's magazine, the record here – at least as presented to us – does not show his work to be similar to that of a "president" or any other corporate officer or fiduciary. Moreover, Cerciello has produced no evidence to indicate that Canale took any actions in an individual capacity, either in or related to Pennsylvania, sufficient to give rise to the claims in the Complaint. Canale's traveling to Philadelphia on two occasions in the last fifteen years for events unrelated to Cerciello's claim cannot serve as a jurisdictional hook for this case.

While, through the catch-all provision in §5322(b), Pennsylvania allows even "the most minimum contact" to confer jurisdiction, that jurisdiction is nonetheless bound by the limits of the Constitution. As the District Court rightly indicated, Cerciello has not demonstrated that Canale "purposefully directed" his activities at Pennsylvania, and there

9

is thus a failure to meet the constitutional prerequisites for the exercise of personal jurisdiction. *See Burger King Corp,* 471 U.S. at 472; *see also Remick v. Manfredy*, 238 F.3d 248, 258 (3d Cir. 2001) ("We stated that '[s]imply asserting that the defendant knew that the plaintiff's principal place of business was located in the forum would be insufficient in itself.... The defendant must manifest behavior intentionally targeted at and focused on the forum for *Calder* to be satisfied.'").

## III.    Conclusion

For the foregoing reasons, we will affirm the District Court's decision to dismiss Cerciello's claims for lack of personal jurisdiction.