Robert Earl CARNEY, Plaintiff,

v.

BILL HEAD TRUCKING, INC.; and
Bill Head, Individually and Bill
Head Trucking, Defendants.

No. CIV. A. 99–2216.

United States District Court,
E.D. Pennsylvania.

Feb. 14, 2000.

Michael A. Snover, Easton, PA, for Plaintiff.

Matthew J. Siembieda, Timothy D. Katsiff, Blank, Rome, Comisky & McCauley, Philadelphia, PA, Daniel G. Gurwitz, Atlas & Hall, L.L.P., McAllen, TX, for Defendants.

## MEMORANDUM

JOYNER, District Judge.

This action is brought by Plaintiff Robert Earl Carney, a former truck driver, against his former employer, alleging six claims: (i) negligence; (ii) breach of employment contract; (iii) intentional infliction of emotional distress; (iv) wrongful discharge; (v) civil RICO claims; and (vi) civil conspiracy. Defendant has filed a motion to dismiss Plaintiff's claim.[1] For the following reasons, Defendant's Motion is granted in part and denied in part.

### Background

Plaintiff was a truck driver for Defendant's trucking company. On May 6, 1997, Plaintiff set out on an intense sixteen day series of multi-state pickups and deliveries beginning in Texas. Plaintiff alleges that during this trip he repeatedly complained to his supervisors about a lack of sleep, but was told that he must continue with his trip and meet his deadlines. Along the way, Plaintiff consumed a beverage called "Texas Tea," made by adding an unidentified controlled substance to coffee. Plaintiff's memorandum states that "under the pressures asserted upon him by 'Defendant(s) and due to the lack of sleep, Plaintiff consumed the coffee.'" Plaintiff's Memorandum at 5.[2]

The final leg of Plaintiff's trip was to take him to New York. En route to New York, Plaintiff passed through Pennsylvania. This fact is the source of some dispute in this case. Plaintiff claims that his route through Pennsylvania was the standard route for this trip, that Defendant's other drivers have used this route before, and that Defendant was aware that Plaintiff was using this route on this day. Defendant claims that Plaintiff was "off route" by passing through Pennsylvania, and that this was not the standard route for this trip.

On May 22, 1997, while Plaintiff was in Pennsylvania, his truck drifted backward in traffic and struck another vehicle. Plaintiff states that he was unaware of this accident at the time. As a result of this accident, police pursued Plaintiff. Plaintiff did not stop his truck, instead leading police on a 97 mile chase through Cumberland, Lebanon, Dauphin, Berks, and Lehigh counties. Police finally ended the chase by using devices that flattened the truck's tires. Plaintiff states that he was ultimately charged with 118 criminal offenses, including at least: attempted homicide, aggravated assault, driving under the

---

1. Plaintiff has named as Defendants "Bill Head Trucking, Inc.; and Bill Head, Individually and T/A Bill Head Trucking." Defendant's Affidavit states that "Bill Head Trucking, Inc. is not an entity about which I have any knowledge. As far as I know, Bill Head Trucking, Inc. does not exist." It appears from Defendant's Memorandum that Bill Head Trucking is an unincorporated business entity, and that Bill Head and his business can therefore be treated as one and the same.

Therefore, the Court has treated Defendant's Motion as if it is from all defendants in this case. If the Court's assumption is incorrect, this should nevertheless not affect the outcome of this Memorandum and Order in any way that the Court can identify.

2. Plaintiff did not number the pages of his Memorandum, so the Court has numbered the pages to facilitate its references in this opinion. Plaintiff should try to number pages in all documents filed with this Court.

influence of a controlled substance, and reckless endangerment. Plaintiff states in his Memorandum that he was held on $1 million bail, and ultimately pled guilty to several offenses, receiving the prison sentence that he is now serving.

Plaintiff sued Defendant, alleging six claims: (i) negligence; (ii) breach of employment contract; (iii) intentional infliction of emotional distress; (iv) wrongful discharge; (v) civil RICO claims; and (vi) civil conspiracy. Defendant filed a Motion to Dismiss, which is presently before the Court.[3]

### Discussion

## I. PERSONAL JURISDICTION

■ The determination of whether a district court has personal jurisdiction over an out-of-state defendant requires a two-part inquiry. First, the court must determine whether the forum state's long-arm statute permits the exercise of jurisdiction over the defendant. *See* Fed.R.Civ.P. 4(e)(1); *IMO Indus. v. Kiekert AG,* 155 F.3d 254, 259 (3d Cir.1998). Second, the court must determine whether the exercise of personal jurisdiction would be constitutional under the due process clause. *See IMO Indus.* at 259. In Pennsylvania, these two factors are conflated, as the Pennsylvania long-arm statute authorizes personal jurisdiction to the "fullest extent allowed under the Constitution of the United States." 42 Pa.C.S.A. § 5322(b) (Purdon's 1981 & 1999 Supp.); *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 150 (3d. Cir.1995).

■ The determination of whether personal jurisdiction satisfies the due process clause depends upon "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S.

186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). To satisfy the due process clause, the defendant must have purposefully directed conduct toward Pennsylvania, or must have purposefully availed himself of the protection of the laws of Pennsylvania. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

■ There are two independent bases for personal jurisdiction. A defendant is subject to the specific jurisdiction of this Court when the events giving rise to the action are related to Pennsylvania and the defendant has necessary minimum contacts with Pennsylvania. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). But a defendant can also be subject to the 'general jurisdiction' of this Court, regardless of the location of the events giving rise to the action, when the defendant's contacts with Pennsylvania are continuous and systematic. *See Id.* at 414 n. 9 & 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

■ Defendant argues in his Motion that this Court lacks personal jurisdiction over him. When a defendant raises a proper objection to personal jurisdiction, the plaintiff must present "a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularly sufficient contacts between defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat'l Assoc. v. Farino,* 960 F.2d 1217, 1223 (3d Cir.1992) (citation omitted).

Plaintiff's evidence supporting its argument for personal jurisdiction consists of his own affidavit. Defendant, for his part, has submitted an affidavit that conflicts with assertions in Plaintiff's affidavit.[4]

---

**3.** Plaintiff's Memorandum describes a dispute regarding a scheduling agreement between counsel. The dispute is as confusing to this Court as it may have been to the attorneys involved, and the length of time involved is insufficient to lead to any real hardship for

either party. Accordingly, the Court will consider Defendant's Motion to be timely.

**4.** For example, Plaintiff's affidavit states, in part: "I was directed by the dispatcher of Bill Head to take that route through Pennsylvania and they knew I was going to take that route

Plaintiff argues that this Court has both general and specific jurisdiction over Defendant in this matter. In support of its argument, he makes essentially two arguments: (1) that Defendant's use of the highways of Pennsylvania constitutes purposeful availment creating either specific or general jurisdiction; and (2) that the specific incident in Pennsylvania on May 22, 1997 creates specific jurisdiction. Plaintiff's Response at 21–22.[5] These arguments will be addressed in order.

### A. The Use of Pennsylvania's Highways

■ Plaintiff argues that he drove Defendant's truck through Pennsylvania on May 22, 1997, and further that trucks owned by Defendant have, from time to time, used the roads and highways of Pennsylvania. Whether this constitutes sufficient contacts to support personal jurisdiction is admittedly a difficult issue, but decisions from this District and elsewhere to suggest that it does not. *See Amos v. Pendry*, 810 F.Supp. 146, 149 (E.D.Pa. 1992) (holding that "[i]f personal jurisdiction could be established by the mere act of traversing another state's highways, the underlying concerns of due process would be defeated. . . ."). *See also Papachristou v. Turbines, Inc.*, 884 F.2d 1116, 1119 (8th Cir.1989) (reversed *en banc* on the grounds that the Defendant did not merely pass through the state, but also made a business-related delivery there). In this particular case, Plaintiff drove Defendant's truck through Pennsylvania, en route to New York, without any plans to make a pickup or delivery in this state. We agree with the Court in *Amos v. Pendry, see supra*, that this is not a sufficient contact to establish specific jurisdiction. Of course, if passing through Pennsylvania's highways is insufficient to support specific jurisdiction, it certainly will not create general jurisdiction.

### B. The May 22, 1997 incident

■ Plaintiff will no doubt respond to the above analysis that he did not merely drive through Pennsylvania—he caused a traffic accident, and led police on a 97 mile chase through several counties. Indeed, Plaintiff has argued that the May 22, 1997 incident alone gives this Court specific jurisdiction over Defendant. The problem with this argument is that Plaintiff's claim does not arise out of the May 22, 1997 incident. Although a 97 mile police chase is a moment of high drama, and tends to attract our attention in relating the factual background of this case, it is not at the core of Plaintiff's lawsuit.

The facts central to Plaintiff's claim can best be illustrated by pointing to Plaintiff's summary of his claim in his response to Defendant's Motion to Dismiss. Plaintiff supports his claim by describing various conduct by Defendant, such as "encouraging, demanding, and/or failing to discourage the falsification of log books to cover up hour of service violations." Plaintiff's Memorandum at 7. Each of Plaintiff's allegations is of conduct that occurred outside of Pennsylvania, and before Plaintiff drove through Pennsylvania. Plaintiff states in his Memorandum that "[c]leary had the defendant not directed the Plaintiff to proceed as its agent through the state of Pennsylvania and insist he make this delivery while violating Federal and Pennsylvania law, this claim would not have arisen." Plaintiff's Memorandum at 30. But the Court does not see how this could be true,

---

and directed me to take that route." Defendant's affidavit states, in part: "Neither I nor anyone at my office directed Robert Earl Carney to travel 'off route' and through Pennsylvania in order to make his delivery to New York."

5. Plaintiff also argues that "Defendant has been subject to suit previously within the Commonwealth of Pennsylvania. . . ." However, as Plaintiff's evidence in support of personal jurisdiction is limited to his affidavit, and nothing in Plaintiff's affidavit supports this argument, the Court cannot consider it. In any event, the Court sees no reason why this argument, even if supported by evidence, would affect the personal jurisdiction analysis.

given that none of the wrongful conduct that Plaintiff cites to occurred in Pennsylvania. If Plaintiff had not driven through Pennsylvania (whether or not this would have complied with Defendant's orders), Plaintiff's allegations against Defendant would not be any less strong.[6]

Thus, although the events in Pennsylvania of May 22, 1997 shine brightly in the telling of Plaintiff's story, his case is actually rooted in allegations of wrongful acts by Defendant that occurred outside of Pennsylvania and before May 22, 1997. None of the acts that Plaintiff refers to actually occurred in Pennsylvania, nor did any occur while Plaintiff was in Pennsylvania. Plaintiff denies this in his response to Defendant's Motion (see Plaintiff's Answer at ¶ 7), but his Memorandum is devoid of facts supporting this denial. Further, as there is not even a hint of tortious activity in Pennsylvania by Defendant, the Court does not find it appropriate to order Plaintiff to amend his Answer with additional allegations. The May 22, 1997 incident thus does not support specific jurisdiction.

## II. SERVICE OF PROCESS

Defendant argues that Plaintiff failed to properly serve Defendant in this case. This issue is now moot, as Plaintiff once again served process upon Defendant subsequent to Defendant's Motion to Dismiss. This service appears to have been proper, and there appears to be no question that Defendant had notice of this case. Accordingly, Defendant's argument that the case be dismissed for improper service of process is denied.

### CONCLUSION

Plaintiff's case arises out of alleged wrongs by Defendant that occurred outside of Pennsylvania, and before Plaintiff ever entered Pennsylvania. Despite the drama of Plaintiff's activities in Pennsylvania on May 22, 1997, these activities are

not at the core of Plaintiff's claim, and are not a sufficient basis for specific jurisdiction in this case. Further, Plaintiff's driving Defendant's truck through Pennsylvania, en route to New York, does not constitute sufficient contacts to satisfy specific or general jurisdiction. Finally, any potential defects in Plaintiff's service of process were cured by Plaintiff's subsequent service of process, so the case will not be dismissed on those grounds.

■ The Court thus lacks personal jurisdiction over Defendant. Because it appears that the statute of limitations may have run in this case, the Court will use its power to transfer this case to a proper forum rather than dismiss it. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir.1964). Plaintiff's Memorandum suggests that California is a possible new forum for this case, but it is not clear to the Court if this is Plaintiff's preference. The Court will accordingly ask Plaintiff to submit, within seven (7) days, a memorandum listing the potential fora to which Plaintiff would like to see this case transferred. Plaintiff's brief should include citations to appropriate cases supporting personal jurisdiction in the proposed fora. Defendant will have seven (7) days to respond to Plaintiff's memorandum, addressing either personal jurisdiction issues in any of the proposed fora, or arguments as to why any suggested forum creates an unreasonable burden for Defendant (recognizing that choice of forum generally lies with Plaintiff).

An appropriate Order follows.

### ORDER

AND NOW, this ___ day of February, 2000, upon consideration of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Insufficiency of Service and Insufficiency of Process (Document No. 3), and the responses of the

---

**6.** Further, Plaintiff probably does not intend to say that his claim will not lie if he is unable to prove that Defendant actually directed

Plaintiff to pass through Pennsylvania—a fact that Defendant disputes.

parties thereto, it is hereby ORDERED, in accordance with the foregoing memorandum, that the Motion is GRANTED in part and DENIED in part.

Rather than dismiss the case, the Court will transfer this case to an appropriate forum. Plaintiff is thus further ORDERED to file a memorandum with this Court, within seven (7) days, listing potential fora to which it would like to see this case transferred. Defendant will then have seven (7) days to respond to Plaintiff's memorandum. The Court will then decide on the appropriate forum for this case.