**Louis SCHIAVONE, Appellant**

**v.**

**R.J. AVETA, individually and t/a Creative Pools, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 11, 2012.

Filed March 20, 2012.

Gene E. Goldenziel, and Richard F. Goldenziel, Scranton, for appellant.

Edward S. Neyhart, Scranton, for appellee.

Before PANELLA, LAZARUS, and STRASSBURGER*, JJ.

OPINION BY LAZARUS, J.:

Louis Schiavone appeals from the order of the Court of Common Pleas of Pike County dismissing his suit for personal injuries against R.J. Aveta for lack of personal jurisdiction. We reverse.

The trial court stated the relevant facts as follows:

> The instant case stems from an automobile accident which occurred on April 11, 2002, between Plaintiff, Louis Schiavone (hereinafter "Schiavone"), and Kenneth Arnoul (hereinafter "Arnoul"). Arnoul, at the time, was an employee of Defendant, R.J. Aveta (hereinafter "Aveta"), which conducted business under the name Creative Pools. The accident occurred on State Route 590 in Lackawaxen Township, Pike County, Pennsylvania.

> Aveta is in the business of constructing and maintaining swimming pools. Aveta is incorporated in New Jersey, and at the time of the accident, its corporate headquarters were located in Pequannock, New Jersey. Aveta avers that it does business exclusively in the

---

* Retired Senior Judge assigned to the Superior Court.

states of New Jersey and New York. Aveta further avers that it does not conduct any business within Pennsylvania, nor does it have an office in Pennsylvania, nor does it order any products for business use from Pennsylvania. Aveta further avers that, to its knowledge, it has never constructed nor maintained a swimming pool in Pennsylvania.

Both Schiavone and Arnoul are Pennsylvania residents. At the time of the accident, Arnoul was driving home following the completion of his work day as an employee of Aveta in New Jersey. The vehicle which Arnoul was driving was owned and insured by Aveta; Aveta provided the vehicle to Arnoul for use the terms and scope of which are not disclosed by the current record.

Trial Court Opinion, 4/19/11, at 1–2.

On November 22, 2004, Schiavone filed a complaint against Aveta in the Court of Common Pleas of Lackawanna County, alleging that the accident was the result of the negligence of its agent, Arnoul. Aveta filed preliminary objections on December 1, 2004 as to venue and lack of personal jurisdiction in Pennsylvania. The trial court granted Aveta's preliminary objection as to venue, and the case was transferred to the Court of Common Pleas of Pike County.

On August 11, 2010, Aveta again filed a motion to dismiss for lack of personal jurisdiction. The trial court granted the motion on April 19, 2011, dismissing the action because Schiavone did not prove that Aveta had any contacts with Pennsylvania other than allowing Arnoul to use its vehicle to drive to and from work. The court reasoned that mere use by an employee of a company vehicle to drive to and from work in Pennsylvania does not establish the minimum contacts necessary for the court to exercise personal jurisdiction over the employer here. Schiavone filed a

timely appeal raising the following issue for our review:

> Did the Court of Common Pleas, Pike County, Pennsylvania wrongfully deny personal jurisdiction when it failed to find substantial minimum contacts existed against an out-of-state defendant, when the accident occurred upon a Pennsylvania roadway in Pike County, Pennsylvania; the vehicle was used from Pike County, Pennsylvania to various jobs on the way to work in New Jersey; the vehicle was driven to and from [Aveta's] agent's Pennsylvania residence as part of his employment arrangement; the personal use of the vehicle, gas, repairs, etc. were often done in Pennsylvania; and the New Jersey corporation's vehicle, as used by [Aveta's] agent, provided substantial economic benefit to the New Jersey corporation?

Brief of Appellant, 1/11/2012, at 4.

 Our standard of review of a trial court's order granting preliminary objections challenging personal jurisdiction is as follows:

> When preliminary objections, if sustained, would result in the dismissal of an action, such objections should be sustained only in cases which are clear and free from doubt.... Moreover, when deciding a motion to dismiss for lack of personal jurisdiction the court must consider the evidence in the light most favorable to the non-moving party. This Court will reverse the trial court's decision regarding preliminary objections only where there has been an error of law or an abuse of discretion. Once the moving party supports its objections to personal jurisdiction, the burden of proving personal jurisdiction is upon the party asserting it. Courts must resolve the question of personal jurisdiction based on the circumstances of each particular case.

*Gaboury v. Gaboury,* 988 A.2d 672, 675 (Pa.Super.2009) (citations and quotations omitted).

> A state may exercise personal jurisdiction over a nonresident defendant based upon the specific acts of the defendant which gave rise to the cause of action or based on the defendant's general activity within the state. When a state exercises personal jurisdiction over a non-resident defendant in a suit arising out of or related to the defendant's contacts with the forum, the state is exercising specific jurisdiction.

*Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110, 1113 (1992) (citing *Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)).

▆ Section 5322(a) of the Pennsylvania Long–Arm Statute enumerates certain types of contact with Pennsylvania deemed sufficient to warrant the exercise of specific jurisdiction over foreign defendants. *See Gaboury, supra* at 677; 42 Pa.C.S.A. § 5322(a). Section 5322(b) further provides that "specific jurisdiction may be asserted over non-resident defendants 'to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contacts with this Commonwealth allowed under the Constitution of the United States.'" *Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110, 1113 (1992); 42 Pa.C.S.A. § 5322(b). Thus, there are two requirements necessary for Pennsylvania courts to exercise specific jurisdiction over a non-resident defendant: first, jurisdiction must be authorized by the Pennsylvania Long–Arm Statute; and second, the exercise of jurisdiction must comport with constitutional principles of due process. *See Kenneth H. Oaks, Ltd. v. Josephson,* 390 Pa.Super. 103, 568 A.2d 215, 216 (1989); *Gaboury, supra* at 677–78.

Schiavone avers that specific jurisdiction is proper against Aveta under section 5322(a)(3) of the Pennsylvania Long–Arm Statute. That section provides:

> § 5322. Bases of personal jurisdiction over persons outside this Commonwealth
>
> (a) General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... who acts directly or by an agent, as to a cause of action or other matter arising from such person:
>
> \* \* \*
>
> (3) Causing harm or tortious injury by an act or omission in this Commonwealth[.]

42 Pa.C.S.A. § 5322(a)(3).

▆ To establish jurisdiction against Aveta under section 5322(a)(3), Schiavone must prove that Aveta was acting through its agent, Arnoul, at the time of the accident. *See* 42 Pa.C.S.A. § 5322(a)(3); *Gaboury, supra.* Generally, in tort cases, an employer acts through its agent where the conduct of the agent occurs in the course and scope of his employment. *See Costa v. Roxborough Mem'l Hosp.,* 708 A.2d 490, 493 (Pa.Super.1998) (employer is responsible for tortious conduct of employee that causes harm to third party, where employee's conduct occurred in the course and scope of employment); *see also Fitzgerald v. McCutcheon,* 270 Pa.Super. 102, 410 A.2d 1270 (1979) ("master is liable for acts of his servant which are committed during the course of and within the scope of the servant's employment").

▆ In the case at bar, the parties agree that the accident occurred while Arnoul was commuting home from work, and that the car he was driving was owned and maintained by Aveta. Thus, we must determine whether, as a matter of law, an employee driving directly home from work

in a company-owned vehicle is acting within the scope of his employment.

Schiavone does not cite to any Pennsylvania case specifically addressing this question in the context of personal jurisdiction, and our own research has not produced any. However, this issue has been considered in the context of the Pennsylvania Workers' Compensation Act.[1] Therefore, we will look to those cases for guidance.

■■■ The Workers' Compensation Act establishes entitlement to benefits to an employee for injuries "arising in the course of his employment and related thereto[.]" 77 P.S. § 411(1). The purpose of the Act is to compensate employees for injuries sustained "while furthering the business of an employer, 'whether upon the employer's premises or elsewhere.'" *Mackey v. W.C.A.B. (Maxim Healthcare Services)*, 989 A.2d 404, 407 (Pa.Cmwlth. 2010) (quoting 77 P.S. § 411(1)). "Whether an employee is injured in the course of employment is a question of law to be determined on the basis of the [Workers' Compensation Judge's] findings of fact." *Leisure Line v. W.C.A.B. (Walker)*, 986 A.2d 901, 906 n. 9 (Pa.Cmwlth.2009).

■■■ Generally, an employee cannot recover for injuries sustained away from an employer's premises or while coming to and going from work. *Employers Mut. Cas. Co. v. Boiler Erection and Repair Co.*, 964 A.2d 381, 389 (Pa.Super.2008). The rationale for the "coming and going rule" is that, ordinarily, "an employee's travel to or from work does not further his employer's business." *Leisure Line, supra* at 906. However, our courts have recognized exceptions to the rule in circumstances where an employee's use of a vehicle, although not directly related to his or her official duties and not located on the

employer's premises, is nevertheless in furtherance of his or her employment. *See Bensing v. W.C.A.B.*, 830 A.2d 1075, 1078 (Pa.Cmwlth.2003). For instance, where the employment contract included transportation to and from work, the employee, as a matter of law, "continues to be within the scope of employment[.]" *Employers Mut., supra* at 390.

■■■ In order for an employee to sustain the "employment contract" exception to the coming and going rule, he must establish that: (1) he was commuting to or from work; (2) the employer controlled the means of transportation; and (3) the company provided for the costs and expenses related to the employee's commute. *See Leisure Line, supra* at 907. For example, in *Rox Coal Co. v. W.C.A.B. (Snizaski)*, 768 A.2d 384 (Pa.Cmwlth.2001), the Commonwealth Court upheld the "employment contract" exception where an employee was involved in a fatal accident while driving to work in a vehicle provided by his employer. The court noted that the fact that an employee is injured while traveling to or from work in the employer's vehicle does not *per se* establish that the injury was in the course of employment. *See Unity Auto Parts, Inc. v. W.C.A.B. (Bigley)*, 148 Pa.Cmwlth.4, 610 A.2d 1071 (1991). Nevertheless, it found that the claimant had met this burden because the employer did not dispute that "transportation to and from work was one of the terms of [employee's] employment contract[.]" *Id.* at 390. Accordingly, the court concluded that the employee's widow could recover from the employer because the accident occurred in the scope of his employment.

Here, like *Rox Coal*, the record establishes the elements necessary to sustain the "employment contract" exception to

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2708.

the "coming and going rule." Arnoul was involved in an accident during his commute home from work in a vehicle owned and insured by his employer, Aveta. Aveta provided the vehicle as part of Arnoul's employment contract and Aveta paid for all costs of operating the vehicle, including repairs and fuel. *See* Deposition of Arnoul, 4/1/2010, at 8; Brief of Appellee, 1/11/2012, at 7. Further, Arnoul stated that one of the purposes of the vehicle was to benefit Aveta by providing him with transportation to work and to allow him to travel to "job sites that were between the office and [his] home[.]" Deposition of Arnoul, 4/1/2010, at 8; Brief of Appellee, 1/11/2012, at 8. Thus, the elements of the *Leisure Line* test are satisfied in the instant case.[2]

We recognize that the Workers' Compensation Act and section 5322(a)(3) of the Pennsylvania Long–Arm statute serve different purposes; the former provides compensation to employees for injuries sustained in the course of employment, and the latter establishes a basis for jurisdiction over out-of-state defendants. Nevertheless, the inquiry necessary to establish each is the same: whether the employee was acting to further the interests of the employer at the time of the accident. Therefore, we will apply the standards for determining the course and scope of one's employment under the coming and going exception to the instant action.[3]

Because we conclude that an employee commuting home from work in a company-owned vehicle for which all travel expenses are paid for by the employer is acting within the scope of his employment, that employer is responsible for any tortious activity caused as a result of the employee's driving. *See Costa, supra.* Accordingly, Schiavone has established jurisdiction over Aveta under section 5322(a)(3) of the Pennsylvania Long–Arm Statute. *See Gaboury, supra.*

■■■■ Having determined that jurisdiction is proper under the Pennsylvania Long–Arm Statute, we must next assess

---

**2.** We note that Arnoul's employment contract with Aveta provided for all expenses related to the use of the company vehicle, regardless of whether the expense was related to commuting to or from work or to a job site. In *Leisure Line,* the Commonwealth Court rejected an employee's claim for workers' compensation where the employee was injured commuting to work in part because the employee's contract, which provided for a flat *per diem* travel expense, was not directly related to the "actual travel time, distance or expense." *See Leisure Line, supra* at 907. We distinguish the holding in *Leisure Line* from the instant case. *Leisure Line* considered the application of the employment contract exception where the contract provided for a "travel allowance." Depending on the terms of the employment contract, a travel allowance may reimburse an employee for the actual travel time, or, as in *Leisure Line,* may involve a flat fee. Because a "travel allowance" does not necessarily correlate with work requirements, the employee has the burden of proving that the "allowance is re-lated to the actual expense and time involved in the claimant's commute." *Id.* Conversely, here, the employment contract went far beyond a "travel allowance" to include *all* expenses related to the use of the employer-owned vehicle. Although this type of agreement may include expenses unrelated to work, the fact that an employer covers costs of travel beyond those necessary to allow the employee to commute to work does not negate a finding in support of the employment contract exception where the primary purpose of the vehicle is to allow the employee to travel for work-related reasons and the employer covers the full amount of those costs.

**3.** Other jurisdictions have also applied the exceptions to the coming and going rule to determine whether an employee is acting within the course and scope of employment for purposes of third-party tort actions against that employee's employer. *See, e.g., Tran v. Dave's Electric,* 361 S.W.3d 417 (Mo. App. W.D.2011).

whether the exercise of jurisdiction comports with constitutional principles of due process. *See Kenneth H. Oaks, Ltd., supra.* "The due process clause of the Fourteenth Amendment to the United States Constitution protects an individual's liberty interest by not allowing him to be subject to the jurisdiction of a foreign forum with which he has no established contact, ties or relations." *Harris v. NGK North American, Inc.,* 19 A.3d 1053, 1061 (Pa.Super.2011) (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Due process is satisfied when the defendant has (1) purposefully established minimum contacts with the forum state, (2) "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Burger King, supra* at 474, 105 S.Ct. 2174; *see Aventis Pasteur, Inc. v. Alden Surgical Co., Inc.,* 848 A.2d 996, 999–1000 (Pa.Super.2004) (applying two-part test in Pennsylvania).

▇▇▇▇▇ A defendant purposefully establishes minimum contacts where its:

contacts with the forum state [are] such that the defendant could reasonably anticipate being called to defend itself in the forum.... Random, fortuitous, and attenuated contacts cannot reasonably notify a party that it may be called to defend itself in a foreign forum and, thus, cannot support the exercise of personal jurisdiction. That is, the defendant must have purposefully directed its activities to the forum and conducted itself in a manner indicating that it has availed itself of the forum's privileges and benefits such that it should be subjected to the forum state's laws and regulations.

*Aventis Pasteur, Inc. v. Alden Surgical Co., Inc.,* 848 A.2d 996, 1000 (Pa.Super.2004); *see also Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (defendant should reasonably anticipate out-of-state litigation where it "purposefully avails itself of the privileges of conducting activities within the forum State").

▇▇▇▇▇ "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). This analysis is conducted on a case-by-case basis, *see J.C. Snavely & Sons, Inc. v. Springland Assoc.,* 411 Pa.Super. 1, 600 A.2d 972, 974 (1991), based on appropriate factors such as:

(1) the burden on the defendant, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*Kubik v. Letteri,* 532 Pa. 10, 614 A.2d 1110, 1114 (1992) (citing *Burger King, supra* at 478, 105 S.Ct. 2174).

▇▇▇ Aveta asserts that it could not have purposefully established contacts in Pennsylvania because it did not transact any business in Pennsylvania and had no control over Arnoul's decision to drive the company vehicle there. Aveta describes Arnoul's decision to live in Pennsylvania as a "fortuitous circumstance" that neither benefited the company nor was induced by it. Brief of Appellee, at 13. Thus, Aveta concludes that there is no basis for personal jurisdiction in Pennsylvania.

■ In support of these claims, Aveta cites to the United States Supreme Court's decision in *World–Wide Volkswagen v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), and the Eastern District Court of Pennsylvania's decision in *Carney v. Bill Head Trucking, Inc.,* 83 F.Supp.2d 554 (E.D.Pa.2000).[4] While these cases are instructive, neither is directly on point.

In *World–Wide Volkswagen,* the Supreme Court considered whether an Oklahoma State court could exercise jurisdiction over a New York automobile retailer and wholesale distributer whose only connection with Oklahoma was that an automobile sold by the defendants in New York to New York residents was involved in a car accident there one year later. While the Court noted that the possibility of an accident in another forum was foreseeable, it rejected foreseeability as the primary criterion for jurisdiction. *See World–Wide Volkswagen, supra* at 295, 100 S.Ct. 559. Rather, the Court asserted that the "foreseeability" critical to due process analysis is whether "the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. 559. In assessing the reasonableness of jurisdiction in Oklahoma, the Court determined that the record presented "a total absence of those affiliating circumstances that are a necessary predicate to any exercise of state-court jurisdiction." *Id.* at 295, 100 S.Ct. 559. The Court iterated:

> [Defendants] carry on no activity whatsoever in Oklahoma. They close no sales and perform no services there. They avail themselves of none of the privileges and benefits of Oklahoma law.

They solicit no business there either through salespersons or through advertising reasonably calculated to reach the State. Nor does the record show that they regularly sell cars at wholesale or retail to Oklahoma customers or residents or that they indirectly, through others, serve or seek to serve the Oklahoma market. In short, [plaintiffs] seek to base jurisdiction on one, isolated occurrence and whatever inferences can be drawn therefrom: the fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma.

*Id.* Because the defendants did not purposefully direct minimum contacts in Oklahoma, the Court held that Oklahoma's exercise of in personam jurisdiction over the defendants violated due process. *Id.* at 299, 100 S.Ct. 559.

In *Carney,* a truck driver was involved in a vehicle accident in Pennsylvania while en route to New York. When Pennsylvania State Police arrived, the driver refused to stop his truck, leading police on a 97–mile chase through five counties. The driver subsequently sued his employer in the Eastern District Court of Pennsylvania, alleging the employer was liable because it required him to complete a series of multistate pickups despite his complaints about lack of sleep. *See Carney, supra* at 555.

In assessing the constitutionality of jurisdiction in Pennsylvania, the Eastern District Court determined that the mere act of passing through Pennsylvania, "without any plans to make a pickup or delivery in this state" was insufficient contact to establish specific or general jurisdiction. *Id.* at 557. However, significant to this finding was the fact that the driv-

---

4. This Court is not bound by decisions of federal courts inferior to the United States Supreme Court, although we may look to them for guidance in interpretation of federal case law. *See Commonwealth v. Travaglia,* 541 Pa. 108, 661 A.2d 352, 363 n. 15 (1995).

er's claims against the employer, which included "encouraging, demanding, and/or failing to discourage the falsification of log books to cover up hour of service violations," all involved conduct that occurred outside of Pennsylvania and before the driver drove through Pennsylvania. The court summarized its holding as follows:

> Plaintiff's case arises out of alleged wrongs by Defendant that occurred outside of Pennsylvania, and before Plaintiff ever entered Pennsylvania. Despite the drama of Plaintiff's activities in Pennsylvania ..., these activities are not at the core of Plaintiff's claim, and are not sufficient basis for specific jurisdiction in this case.

*Id.* at 558.

In the instant action, unlike the plaintiff in *Carney*, Schiavone's claims against Aveta arose out of activity that occurred in Pennsylvania, namely Arnoul's negligent operation of Aveta's vehicle. Further, unlike *Carney*, Arnoul was not simply traveling through the state or riding for a non-business purpose; he was commuting directly home in a company-owned and insured vehicle. While Aveta insists that such activity was not purposeful availment because it was not at the direction of Aveta, case law suggests otherwise.

The critical inquiry for determining purposeful contacts with a forum is whether the defendant could reasonably anticipate being called to court there. *See World–Wide Volkswagen, supra* at 297, 100 S.Ct. 559. Although Aveta is correct in its statement that it had no control over where Arnoul chose to live, it did have discretion in including company-provided transportation as part of his employment contract knowing that he lived in Pennsylvania. Thus, Aveta was aware that Arnoul would be using the vehicle in Pennsylvania during his commute to and from work.

Further, it was reasonable for Aveta to assume that such activity would result in it being named as a defendant in Pennsylvania. Our courts have consistently held in Workers' Compensation cases that an employee commuting home in a vehicle owned and paid for by a company continues to be within the scope of his employment. *See, e.g., Rox Coal, supra.* This reasoning is equally sound in third-party tort claims. Aveta's decision to provide Arnoul with a vehicle furthered its own pecuniary interests by enabling Arnoul to travel to work and to various job sites from his home in Pennsylvania. Thus, Aveta's contacts with Pennsylvania were not mere "random, fortuitous, or attenuated contacts," or the "unilateral activity of another party or third person," like those of the defendants in *World–Wide Volkswagen, supra,* but activity that occurred consistently and repeatedly over the entire course of Arnoul's employment with Aveta. *See Burger King, supra.* Accordingly, Aveta purposefully established minimum contacts in Pennsylvania. *See Aventis Pasteur, supra.*

■ Additionally, unlike *Carney* and *World–Wide Volkswagen,* the exercise of jurisdiction by Pennsylvania in the instant action comports with notions of "fair play and substantial justice." *See International Shoe Co., supra.* Applying the factors enumerated by the United States Supreme Court in *World–Wide Volkswagen, supra* and adopted by our Supreme Court in *Kubik, supra,* jurisdiction weighs in favor of Pennsylvania. The first factor weighs in favor of jurisdiction in Pennsylvania because the burden on Aveta in litigating in Pennsylvania is small as the company regularly operates in the neighboring states of New York and New Jersey. The second and third factors also support jurisdiction in Pennsylvania because Pennsylvania has an interest in protecting its residents from

tortious conduct of third parties that occur in this state, and Pennsylvania is the most convenient forum for Schiavone, as a Pennsylvania resident, to obtain relief. Finally, the fourth and fifth factors weigh in favor of jurisdiction in Pennsylvania because litigating the case in the forum where the accident occurred would promote an efficient resolution of the controversies and the shared interests of the several states involved. *See Kubik, supra* at 1114.

Based on the above reasoning, we conclude that Aveta had sufficient minimum contacts with Pennsylvania to justify the exercise of personal jurisdiction over it in the instant action. Thus, the trial court's decision to grant Aveta's preliminary objections for lack of personal jurisdiction was an error of law. *See Gaboury, supra.*

Order reversed; case remanded for further proceedings consistent with this decision. Jurisdiction relinquished.