**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DEDICATED NURSING ASSOCIATES, INC. | : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : : : | |
| MINOCQUA HEALTH AND REHAB LLC D/B/A MINOCQUA HEALTH; AND REHAB SYMMETRY HEALTHCARE MANAGEMENT LLC; LOUIS LLOYD KASS; JOHN THOMAS ONSON AND LEVI YITZCHOK RUDD | : : : : : : : : | No. 320 WDA 2023 |
| Appellant | : | |

Appeal from the Order Entered February 22, 2023
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 22-CI-02170

BEFORE:   BOWES, J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED: February 21, 2024**

Rehab Symmetry Healthcare Management LLC ("Symmetry"), John Thomas Onson, and Levi Yitzchok Rudd (collectively "Appellants") appeal the order denying their petition to open or, in the alternative, strike the default judgment entered against them and in favor of Dedicated Nursing Associates, Inc. ("DNA").  We affirm.

This case involves a dispute arising from a written contract between DNA, a Pennsylvania corporation, and Minocqua Health and Rehab LLC d/b/a Minocqua Health ("Minocqua"), a Wisconsin limited liability company.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Thereunder, Minocqua agreed to compensate DNA in exchange for DNA providing staff to Minocqua's skilled nursing facility located in Wisconsin. The agreement contained a choice of law and venue provision, stating that all disputes arising therefrom shall be litigated pursuant to Pennsylvania law in Westmoreland County, Pennsylvania. Appellants were not parties to the contract, though Rudd executed it on behalf of Minocqua in his capacity as its chief executive officer.

On June 27, 2022, DNA filed a complaint naming Minocqua, Appellants, and Louis Lloyd Kass as defendants.[1] In the complaint, DNA asserted one count each of breach of contract and unjust enrichment against Minocqua, averring that it failed to pay DNA for the staffing services provided. The complaint also included one count of unjust enrichment against Appellants and Kass, alleging that, as part owners of Minocqua, they wrongly profited from DNA's performance and Minocqua's non-payment. As pled in the complaint, Symmetry was a limited liability company organized in Florida, Onson was a resident of North Carolina, and Rudd was a resident of Florida. The affidavits of service indicated that none of the Appellants was served within Pennsylvania, though there is no dispute that they were all served in accordance with our procedural rules.

Neither Appellants nor Minocqua filed a responsive pleading to the complaint. DNA subsequently secured two separate default judgments, one

---

[1] Louis Lloyd Kass is not a party to this appeal, as he was never served with the complaint and no judgment was entered against him.

against Minocqua in the amount of $76,492.21 and the other against Appellants in the amount of $67,806.14. Approximately four months later, Appellants filed a motion to open or strike the default judgment, asserting that there was a fatal defect on the face of the record because the trial court lacked personal jurisdiction over them. More particularly, they highlighted that nothing in the record demonstrated that they were domiciled or physically present in Pennsylvania at the time of service, or that they conducted business within the Commonwealth. The trial court denied the petition after argument and the consideration of briefs. Specifically, it found that as to the request to strike the judgment, Appellants failed to show a fatal defect on the face of the record. Regarding the request to open, the court held that the petition was not timely filed, and that Appellants offered no reasonable excuse for the delay in responding to the complaint.

This timely appeal followed. The trial court entered an opinion pursuant to Pa.R.A.P. 1925(a), and Appellants complied with the court's order to file a concise statement of errors. Appellants present the following issues for our review:

I. Whether there is a defect on the face of the record, such that the default judgment should have been stricken, when there is no jurisdiction over the persons of the Appellants, who do not reside in, were not served in, and do not have statutory minimum contacts with the Commonwealth of Pennsylvania.

II. Whether there is a defect on the face of the record, such that the default judgment should have been stricken, when two different judgments based on contradictory theories of recovery are entered on the same alleged damages.

Appellants' brief at 4.

Notably, Appellants have limited their arguments on appeal to whether the judgment should have been stricken, as opposed to opened.[2] We begin with the pertinent standard of review. "An appeal regarding a petition to strike a default judgment implicates the Pennsylvania Rules of Civil Procedure. Issues regarding the operation of procedural rules of court present us with questions of law. Therefore, our standard of review is *de novo* and our scope of review is plenary." ***Green Acres Rehabilitation and Nursing Center v. Sullivan***, 113 A.3d 1261, 1267 (Pa.Super. 2015) (cleaned up).

As to petitions to strike a judgment, this Court has stated as follows:

A petition to strike . . . operates as a demurrer to the record. A petition to strike a judgment may be granted only for a fatal defect or irregularity appearing on the face of the record. A petition to strike is not a chance to review the merits of the allegations of a complaint. **Rather, a petition to strike is aimed at defects that affect the validity of the judgment and that entitle the petitioner, as a matter of law, to relief**. A fatal defect on the face of the record denies the prothonotary the authority to enter judgment. When a prothonotary enters judgment without authority, that judgment is void *ab initio*. When deciding if there are fatal defects on the face of the record for the purposes of a petition to strike a default judgment, a court may only look at what was in the record when the judgment was entered.

---

[2] At oral argument before this Court, counsel for Appellants conceded that the petition was untimely to the extent it requested that the default judgment in question be opened. Additionally, Appellants do not assert in their brief that the trial court erred in concluding that the petition to open was not timely. Therefore, we do not address the court's denial of this portion of Appellants' petition.

*Bank of New York Mellon v. Johnson*, 121 A.3d 1056, 1060 (Pa.Super. 2015) (emphasis added, citation omitted).  Further, when reviewing the merits of a petition to strike, "the court is limited to a review of only the record as filed by the party in whose favor the warrant is given.  Matters *dehors* the record will not be considered.  If the record is self-sustaining, the judgment will not be stricken."  *Digital Communications Warehouse, Inc. v. Allen Investments, LLC*, 223 A.3d 278, 287 (Pa.Super. 2019) (cleaned up).

In their first argument on appeal, Appellants challenge the trial court's denial of their petition to strike on the basis that the court lacked personal jurisdiction over them.  *See* Appellants' brief at 14-17.  We note:

> A judgment is void on its face if one or more of three jurisdictional elements is found absent:  jurisdiction of the parties; subject matter jurisdiction; or the power or authority to render the particular judgment.  The term "jurisdiction" relates to the competency of the individual court, administrative body, or other tribunal to determine controversies of the general class to which a particular case belongs.  Moreover, it is never too late to attack a judgment or decree for want of jurisdiction, as any such judgment or decree rendered by a court which lacks jurisdiction of the subject matter or the person is null and void, and can be attacked by the parties at any time.  A petition to strike a judgment founded on a jurisdictional deficiency is therefore not subject to the same "timeliness" considerations as a petition to open the judgment.

*Digital Communications Warehouse, Inc.*, *supra* at 288 (citation omitted).

General personal jurisdiction over individuals, such as Onson and Rudd, and limited liability companies, like Symmetry, is governed by 42 Pa.C.S. § 5301, which specifies in pertinent part:

**(a) General rule.**--The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person, or his personal representative in the case of an individual, and to enable such tribunals to render personal orders against such person or representative:

(1)   Individuals.--

(i)   Presence in this Commonwealth at the time when process is served.

(ii)   Domicile in this Commonwealth at the time when process is served.

(iii)   Consent, to the extent authorized by the consent.

. . . .

(3)   Partnerships, limited partnerships, partnership associations professional associations, unincorporated associations and similar entities.--

(i)   Formation under or qualification as a foreign entity under the laws on this Commonwealth.

(ii)   Consent, to the extent authorized by the consent.

(iii) The carrying on of a continuous and systematic part if its general business within this Commonwealth.

42 Pa.C.S. § 5301(a).

Pennsylvania courts may also exercise specific personal jurisdiction over non-resident defendants under the Pennsylvania long-arm statute. *See* 42 Pa.C.S. § 5233. As relevant here, that statute sets forth thusly:

**(a) General rule.**--A tribunal of this Commonwealth may exercise personal jurisdiction over a person . . . who acts directly, or by an agent, as to a cause of action or another matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for purpose of this paragraph:

(i) The doing by any person in this Commonwealth of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object.

(ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object with the intention of initiating a series of such acts.

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

(iv) The engaging in any business or profession within this Commonwealth, whether or not such business requires license or approval by any government unit of this Commonwealth.

(v) The ownership, use or possession of any real property situate within this Commonwealth.

(2) Contracting to supply services or things in this Commonwealth.

(3) Causing harm or tortious injury by an act or omission in this Commonwealth.

(4) Causing harm or tortious injury in this Commonwealth by an act or omission outside this Commonwealth.

42 Pa.C.S. § 5322(a).

The Due Process Clause of the Fourteenth Amendment allows a state to exercise personal jurisdiction over a defendant if the defendant had "certain minimum contacts with [the forum state] such that the maintenance of the

suit does not offend traditional notions of fair play and substantial justice." ***International Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). A defendant establishes minimum contacts where the "contacts with the forum state are such that the defendant could reasonably anticipate being called to defend itself in the forum." ***Schiavone v. Aveta***, 41 A.3d 861, 869 (Pa.Super. 2012) (cleaned up).

With this background in mind, we turn to Appellants' arguments. They first assert that it is clear from the record that the trial court had no personal jurisdiction over any of them. ***See*** Appellants' brief at 14-16. Appellants contend that even accepting the averments in the complaint and affidavits of service as true, DNA did not establish that the court had general jurisdiction over Onson or Rudd pursuant to § 5301(a)(1) because neither of them was present in Pennsylvania when served with the complaint, domiciled in Pennsylvania at that time, or consented to jurisdiction by any agreement, since they were not parties to the contract at issue. ***Id***. at 14-15. Appellants argue that the same applies to Symmetry, which was not organized in Pennsylvania, did not consent to jurisdiction, and did not carry on any general business within Pennsylvania. ***Id***. at 15.

Further, Appellants aver that the trial court did not have specific jurisdiction over them since the allegations in the complaint "d[id] not satisfy the minimum contacts requirements of Pennsylvania's long-arm statute." ***Id***. at 16. They note that none of them was a named party to the contract. ***Id***.

at 15. Minocqua, not Appellants, was the only participant with an obligation to pay DNA for its services. *Id*. at 15-16. Appellants iterate that they had no minimum contacts with this Commonwealth, stating that "Appellants did not enter into a contract; supply services; commit a tort; cause tortious harm; hold an interest in property; issue insurance; accept an appointment; execute a bond; apply for a permit; or commit; or violate a law within" Pennsylvania. *Id*. at 16. Since this lack of jurisdiction was apparent on the face of the record, Appellants assert that the court erred in denying their motion to strike the default judgment.

DNA argues that there was no fatal defect on the face of the record and accuses Appellants of attempting to "shoe-horn a defense" into the petition to strike. DNA's brief at 8. It also addresses the merits of Appellants' arguments as to the lack of *in personam* jurisdiction by pointing to paragraphs in the complaint that purport to establish such jurisdiction. *Id*. at 9 (citing Complaint, 6/27/22, at ¶ 9). DNA contends that Appellants "should have reasonably anticipated being ha[i]led into court in Pennsylvania" based on the fact that Onson and Rudd are officers of Minocqua. *Id*. at 13. DNA maintains that because Minocqua consented to Pennsylvania jurisdiction in the contract, that consent extended to Appellants based on their relationships to and control over Minocqua.

Upon review, we conclude that the trial court did not err in denying Appellants' motion to strike the default judgment. While Appellants undergo

significant pains to argue exactly why the complaint, as stated, does not establish the existence of personal jurisdiction over them, this argument misses the mark. As our case law makes clear, the proper question here is whether there was a defect on the face of the record that establishes that the trial court necessarily lacked jurisdiction over them **as a matter of law**. *Accord Bank of New York Mellon*, *supra* at 1060.

Initially, we note that a petition to strike a judgment on the basis that the court lacked jurisdiction over the person typically occurs when there is a defect relating to service of process or the notice requirements for securing a default judgment. *See*, *e.g.*, *Oswald v. WB Public Square Associates, LLC*, 80 A.3d 790, 798 (Pa.Super. 2013) ("[W]e conclude that appellee's failure to utilize the proper language in her ten–day notice constitutes a 'fatal defect on the face of the record' pursuant to Rule 237.1." (cleaned up)). In those instances, where a plaintiff fails to comply with a rule and that omission can be determined on the face of the record, a petition to strike may be granted.

On the other hand, if the court is required to consider any fact outside of the record, or if an averment of fact is disputed, it is improper to strike a judgment. *See Roy by and through Roy v. Rue*, 273 A.3d 1174, 1187 (Pa.Super. 2022) ("[I]f a party seeks to challenge the truth of factual averments in the record at the time judgment was entered, then the party should pursue a petition to open a judgment, not a petition to strike the

judgment." (citation omitted)); *see also Digital Communications Warehouse, Inc.*, *supra* at 288 (finding that the trial court properly denied a petition to strike because it could not consider the defendant's argument that service was not made upon an authorized agent of the entity without reviewing evidence outside the record).

Here, Appellants request that we take the omission of certain facts from the complaint, such as whether Appellants had sufficient minimum contacts with this Commonwealth, as proof that the trial court lacked personal jurisdiction as a matter of law. Appellants' arguments in this vein are premised upon the notion that all facts supporting personal jurisdiction must be apparent from the face of the complaint and return of service. Yet they cite no legal support for such a requirement, and we have discovered none.

Rather, the Pennsylvania Rules of Civil Procedure indicate that personal jurisdiction is an issue of fact that cannot be discerned from the existing record when all that has been filed is the complaint. When a party wishes to challenge a lack of jurisdiction over the person, it may do so by filing a preliminary objection. *See* Pa.R.Civ.P. 1028(a)(1). Critically, the official note to that rule states that objections raising lack of personal jurisdiction "cannot be determined from facts of record." Pa.R.Civ.P. 1028, Official Note. Rather, "[i]f an issue of fact is raised, the court shall consider evidence by depositions or otherwise." Pa.R.Civ.P. 1028(c)(2).

It is clear then that, when presented with an attack on a court's personal jurisdiction over a defendant, for instance because the criteria establishing neither general nor specific jurisdiction are met, the reviewing court must look to evidence beyond the allegations asserted in the pleadings. It necessarily follows that in these situations, the party does not contest the sufficiency of the complaint or record itself. Instead, an objection filed pursuant to this rule raises a new question that a trial court must dispose of through development of a record and additional evidence.

Since Appellants never filed preliminary objections or any other documents until after the default judgments were entered, no additional testimony or evidence was admitted or received.

Accordingly, on the record before us, it is unclear whether the trial court lacked personal jurisdiction over Appellants. We do not know whether any of the Appellants was domiciled in Pennsylvania or carried on a continuous and systematic part of its business within the Commonwealth. Similarly, we have no idea of the extent of Appellants' contacts with this jurisdiction, let alone whether they were sufficient to subject them to specific jurisdiction under Pennsylvania's long-arm statute. In short, the record does not affirmatively evince a lack of jurisdiction, but rather an open question as to jurisdiction. As such, there is no fatal defect on the face of the record that established as a matter of law that the judgment was invalid.

Moreover, we note that Appellants do not assert that the complaint is otherwise defective insofar as it violated any other relevant rule of civil procedure. For example, they do not contend that the complaint lacked a notice to defend (Pa.R.Civ.P. 1018.1); the necessary contents of pleadings (Pa.R.Civ.P. 1019); a request for the specific relief sought (Pa.R.Civ.P. 1021); or a verification (Pa.R.Civ.P. 1024). Since the complaint complied with the our procedural rules, we cannot agree with Appellants that it is deficient as a matter of law. *See Bank of New York Mellon*, *supra* at 1063 (finding no fatal defect on the face of a record when a complaint for mortgage foreclosure complied with Pa.R.Civ.P. 1147). We likewise see no flaws within the affidavits of service, and Appellants do not assert that any aspect of service in this case was faulty. *See Mountney v. Everclear Roof & Restoration*, 266 A.3d 655, 2021 WL 4958784, *4 (Pa.Super. 2021) (non-precedential decision) (holding that a petition to strike must be denied when the reviewing court is "unable to uncover any applicable rule of civil procedure or existing authority that conflicts with the affidavit of service as filed"); *see also Sharpe v. McQuiller*, 206 A.3d 1179, 1184 (Pa.Super. 2019) (stating that "[g]enerally, courts acquire personal jurisdiction by service of process that satisfies" the Pennsylvania Rules of Civil Procedure).

If we were to grant relief to Appellants, we would be placing an improper burden upon DNA to include averments in its complaint that are not required by law and would reward Appellants for failing to timely file preliminary

objections or a petition to open the judgment. Such a holding would further obliterate the distinction between striking and opening judgments, which are separate remedies reviewed under different standards. *See Oswald*, *supra* at 794 n.3 ("It is well-settled that a petition to strike a default judgment and a petition to open a default judgment are two distinct remedies, which are generally not interchangeable." (citation omitted)). If they had followed the proper procedures, such as filing preliminary objections or a timely petition to open the judgment, Appellants very well may be correct that they **could eventually** demonstrate that the trial court lacked jurisdiction over them. However, Appellants, on full notice that they had been sued here, sat on their rights and thereby limited this Court's review to a record that is simply insufficient to make this determination as a matter of law.

Since any lack of personal jurisdiction cannot be ascertained from the record at the time the default judgments were entered, Appellants are not entitled to relief on this basis.[3]

_____

[3] Appellants cite *Stepnowski v. Avery*, 340 A.2d 465 (Pa.Super. 1975), as analogous to the matter *sub judice*. There, like here, the defendants filed no responsive pleading to the complaint, instead challenging the court's jurisdiction over them for the first time in a petition to strike or open filed after entry of a default judgment, which the trial court granted. This Court affirmed, and in so doing reviewed the averments in the complaint to ascertain whether jurisdiction was established, concluding that the individual defendants lacked sufficient minimum contacts with Pennsylvania so as to satisfy the then-current version of the long-arm statute. *Id*. at 496. We find this case distinguishable since it does not indicate whether the defendants' petition to open was timely filed and considered by the trial court before it ultimately
*(Footnote Continued Next Page)*

In their second issue on appeal, Appellants assert that the petition to strike should have been granted because the trial court lacked authority or power to enter judgment against Appellants after it entered a separate judgment against Minocqua, and that this error constitutes a defect on the face of the record. **See** Appellants' brief at 18-21. Appellants argue that it is improper to have two judgments herein, as doing so entitles DNA to double recovery without requiring it to elect a remedy. **Id**. at 18. They cite case law stating that a plaintiff "cannot recover on a claim for unjust enrichment if such claim is based on the breach of a written contract." **Id**. at 19. Appellants also believe that they were improperly held liable for Minocqua's debts simply because they were owners of Minocqua, and that the assertions in the complaint "failed to justify a reason to pierce the corporate veil and hold Appellants liable for the express contractual obligation of Minocqua." **Id**. at 20-21.

As to this issue, the trial court stated thusly:

[Appellants] did not cite any case law or authority that directly supports a finding that [DNA] was barred from obtaining a default judgment against both . . . Minocqua and [Appellants] when neither responded in accordance with the Pennsylvania Rules of Civil Procedure and requirements of Pa.R.C[iv].P. 1037 were

---

struck the judgment. As indicated above, had Appellants filed a prompt petition to open the default judgments here, it is possible they would have been entitled to relief. Further, to the extent this Court in **Stepnowski** determined that there was a fatal defect on the face of the record by examining the adequacy of averments in the complaint, we believe that procedure has been implicitly abrogated by the many binding decisions filed since then, as cited and discussed in the body of this memorandum.

- 15 -

satisfied at to both. The argument actually goes to the excessiveness of the award, which is an insufficient ground to strike a judgment. ***Johnson v. Earl Scheib, Inc.***, 507 A.2d 1228 (Pa.Super. 1986). Further, the mere fact that there are two judgments does not mean that [DNA] would execute on both to obtain a double recovery. [DNA] could execute on either judgment until there is a full satisfaction of the unpaid invoices. Therefore, the fact that [DNA] obtained a default judgment against both sets of defendants does not qualify as a defect on the face of the record and did not serve as a basis for this court to strike the default judgment.

Trial Court Opinion, 4/21/23, at 5.

For its part, DNA distinguishes the case law cited by Appellants discussing the rule against double recoveries, arguing that DNA has not yet recovered on either judgment, and hence there is no violation of this principle. ***See*** DNA's brief at 15-16. Additionally, DNA asserts that the contention from Appellants that they were improperly held liable for the debts of Minocqua goes to the merits of DNA's claim, which is an inappropriate consideration when reviewing a petition to strike. ***Id***. at 17 (citing ***Green Acres***, ***supra*** at 1267).

We conclude that Appellants again have not demonstrated an error on the face of the record entitling them to relief as a matter of law, and thus the trial court correctly denied the petition to strike. There can be no violation of the doctrines of either double recovery or elections of remedies here since, as both the court and DNA emphasize, DNA has not recovered on the judgments. ***See Schwartz v. Rockey***, 932 A.2d 885, 892 (Pa. 2007) (stating that the primary application of the doctrine of election of remedies is "to prevent

**double recovery** from a single injury" (emphasis added)). To the extent Appellants assert error based upon their belief that DNA's claims could not succeed on the merits, such contentions are improper to consider as to a petition to strike a default judgment. ***See Bank of New York Mellon***, ***supra*** at 1060 ("A petition to strike is not a chance to review the merits of the allegations of a complaint.").

In sum, Appellants have failed to convince us that there is a fatal defect on the face of the record. Therefore, the court did not err in denying Appellants' motion to strike the default judgment entered against them.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/21/2024